This case was initially heard before the deputy commissioner in Asheville on October 16, 1995. Following the initial hearing, the depositions of Joseph M. Dement, M. D., and Leslie Cargile, M. D., were received into the record. The objections raised therein are ruled upon in accordance with the law and this Opinion and Award. Upon receipt of the parties' written contentions, the record was duly ordered closed on April 1, 1996, and the deputy commissioner rendered her decision.
**********
The undersigned have reviewed the Award based upon the record of proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the undersigned find as fact and conclude as matters of law the following, which were entered into by the parties in the Pre-Trial Agreement, which was filed by the parties on October 6, 1995, and at the initial hearing, as
STIPULATIONS
1. On September 7, 1994, the date the plaintiff first became disabled as a result of the claimed occupational disease giving rise hereto, the parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act.
2. The employment relationship existed between the parties at the relevant time.
3. Old Republic Insurance Company was the carrier on the risk.
4. The plaintiff's average weekly wage was $353.78, which yields a weekly compensation rate of $235.87, based upon the Form 22.
5. Plaintiff continued to work for the defendant-employer until October 11, 1994, at which time his employment was terminated.
6. The plaintiff filed a Form 18 with the Commission on September 30, 1994.
7. The plaintiff filed a Form 33 with the Commission on September 30, 1994.
8. Defendant's counsel filed a Form 33R with the Commission on November 9, 1994.
9. The parties stipulated to the introduction of the following documents into evidence:
 a. Six pages of Employment Security Commission records;
b. Nine pages of medical reports;
 c. A six-page recorded statement of the plaintiff; and
d. Three pages of employment records.
10. The issue for determination is whether the plaintiff sustained a compensable occupational disease on September 7, 1994, and if so, to what benefits he is entitled under the North Carolina Workers' Compensation Act.
**********
Based upon all the competent, credible, and convincing evidence adduced from the record, the undersigned make the following additional
FINDINGS OF FACT
1. At the time of the initial hearing, the plaintiff was a thirty-nine year old male, who was right hand dominant and who had obtained his G.E.D.
2. The plaintiff was hired as a full-time, forty hour per week worker by defendant-employer on May 31, 1994, where he worked as a material bagger, dryer operator and compactor operator.
3. In August of 1994, the plaintiff began working a second job at a business called Sonopress, where he worked four hours per day for five days per week placing compact discs in plastic boxes and inserting the printed material in the cases.
4. As a compactor operator with defendant-employer, the plaintiff removed T-shirt type material of varying weights and thicknesses from a buggy and loaded the material in a compactor, using electric scissors to cut the material into fifty pound bundles.
5. The plaintiff was off of work over the Labor Day holiday with defendant-employer, and he next reported to work on September 7, 1994, at which time he began to experience pain and swelling in his right hand, and he could not open and close the hand. The plaintiff had been cutting material with manual scissors when he felt the pain.
6. The plaintiff had been using the manual scissors for about two weeks, as the electric scissors had been out of service.
7. The plaintiff reported his hand symptoms to his lead man and to Pete Nichols, his supervisor, and reported that the problem may have been from using the scissors or from moving rolls of material.
8. The plaintiff was sent to the first aid room, where an ice pack was applied. Mr. Nichols sent plaintiff to work in the dryer area; however, due to continued complaints of pain, the plaintiff was told to punch out and go home.
9. Mr. Nichols did not prepare an injury report on plaintiff's injury; therefore, on September 8, 1994, when the plaintiff telephoned defendant's personnel office, he was informed by Ms. Cardona that the defendants would not refer him to a doctor.
10. After the defendants declined plaintiff's request for medical treatment, the plaintiff sought medical care at the emergency room at Memorial Mission Hospital, where he was given pain and anti-inflammatory medication. The plaintiff was diagnosed as having tendonitis, and was released to return to work with minimal right hand work, with no use of scissors.
11. The defendants provided the plaintiff with light duty work, using electric jacks to move 300 pound buggies, and plaintiff volunteered to relieve dryer operators, which required him to manually push buggies from the dryers and to use manual scissors to tie cloth.
12. On September 12, 1994, the plaintiff was seen by Dr. Leslie Cargile, upon referral by the defendants, after he continued to have complaints of hand pain. A physical examination revealed minimal swelling on the dorsal aspect of plaintiff's right hand. Dr. Cargile restricted the plaintiff to light duty with no heavy lifting and no repetitive or recurrent use of the right hand for four days. Dr. Cargile diagnosed plaintiff as having a burst blood vessel in the right hand.
13. On September 16, 1994, the plaintiff sought treatment with Dr. Joseph Dement, at which time testing and examination were indicative of a diagnosis of overuse tendonitis in the right wrist extensor tendon. Dr. Dement prescribed medication, a forearm immobilizer, and light duty work with no use of right hand. On September 21, 1994, the plaintiff advised Dr. Dement of continuing problems, and by telephone, Dr. Dement authorized the plaintiff to remain out of work from September 21, 1994 through October 3, 1994.
14. From October 3, 1994, through October 17, 1994, Dr. Dement restricted the plaintiff from repetitive lifting, twisting, or cutting.
15. The plaintiff returned to work after October 3, 1994 and worked for three days following which plaintiff was terminated by the defendant-employer in early October of 1994. after he failed to report to work after October 7, 1994. Pursuant to defendant's absentee policy, plaintiff was considered to have voluntarily terminated his employment after three days of not reporting in to work.
16. The plaintiff never complained of problems performing the light duty work due to his right hand to his supervisor.
17. The light-duty job performed by the plaintiff was a part of the regular duties performed by employees at defendant-employer, and as such, was not a "make-work" job. However, the defendants failed to submit information regarding the duties of the light-duty job to either Dr. Cargile or Dr. Dement in order to determine if the work was suitable to plaintiff's restrictions, which, although not required by law, would have been more credible and convincing evidence to the undersigned in the case at hand. Defendants' determination of the job as suitable is not credible or convincing to the undersigned in this case.
18. The plaintiff began working as a tractor-trailer driver for a trucking company on November 27, 1994. Plaintiff's duties included driving, loading, and unloading cargo. The plaintiff earned $300.00 per week, and worked for the trucking company for three weeks.
19. The plaintiff obtained employment with SDX Electronics on December 19, 1994, where he worked through February 2, 1995, testing electronic boards. The plaintiff earned $210.00 per week.
20. The plaintiff was laid off from SDX on February 2, 1995, and drew unemployment compensation in an amount of $154.00 per week until May 6, 1995.
21. The plaintiff became self-employed as a painter after May 6, 1995, where he operated a sprayer.
22. The plaintiff was last injuriously exposed to the hazards of the occupational disease while employed with defendant-employer. There is no convincing evidence of record that his employment at Sonopress led to or aggravated his occupational disease. Any aggravation or flare-up of his condition after October of 1994 did not constitute a material change of the condition. Plaintiff's employment with defendant-employer caused or significantly contributed to the development of his condition of overuse tendonitis, and his employment there placed him at an increased risk for such condition due to the nature of his work at the time, a risk to which the general public was not equally exposed.
**********
The foregoing findings of fact engender the following additional
CONCLUSIONS OF LAW
1. The plaintiff contracted a compensable occupational disease within the meaning of N.C. Gen. Statute § 97-53 (13).
2. Plaintiff was last injuriously exposed to the hazards of the disease in his employment with defendants. A mere exacerbation or flare-up of the condition does not constitute augmentation or changing of the disease process itself. Wilkinsv. J. P. Stevens Company, 333 N.C. 449, 426 S.E.2d 675 (1993).
3. While the light duty job was not a "make-work" job, but was a part of regular work performed in the course of defendant's business, the undersigned are unable to conclude as a matter of law that the plaintiff refused suitable employment. Defendants failed to submit the job duties for approval by plaintiff's doctors which would have more convincingly helped to establish that after October 7, 1994, the plaintiff refused suitable employment. The record as it now exists fails to convincingly and sufficiently show to the undersigned that the light duty work was suitable. See, Arrington v. Texfi Industries, No. COA 95-1124 (N.C.App. Aug. 6, 1996) and Seagraves v. The Austin Co., ofGreensboro, No. COA 94-853 (N.C.App. July 16, 1996). It is further clear from this record that plaintiff did have imposed valid restrictions and further that plaintiff did make reasonable efforts to find work within these restrictions.
4. As a result of the compensable occupational disease, the plaintiff is entitled to temporary total disability compensation at the rate of $235.87 per week for the period from September 21, 1994 through October 3, 1994, and from October 7, 1994 through November 26, 1994. N.C. Gen. Statute § 97-29.
5. As a result of the compensable occupational disease, the plaintiff is entitled to temporary partial disability compensation for the period from November 27, 1994 to the present and continuing until such time as plaintiff's average weekly wage meets or exceeds the pre-injury wage, pursuant to N.C. Gen. Statute § 97-30.
6. The plaintiff is entitled to have defendants pay medical expenses incurred as a result of the occupational disease including treatment at Memorial Mission Hospital and that by Drs. Cargile and Dement.
**********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay to plaintiff in a lump sum temporary total disability compensation at the rate of $235.87, for nine and one-seventh weeks.
2. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay temporary partial disability compensation to the plaintiff beginning on November 27, 1994, and continuing until plaintiff reaches the pre-injury wage, until he receives 300 weeks of total compensation, or until further orders of the Commission. As much of said compensation as has accrued shall be paid to plaintiff in a lump sum.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded plaintiff in paragraphs 1 and 2 is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be paid directly to counsel.
4. Defendants shall pay medical expenses incurred as a result of the compensable occupational disease.
5. Defendants shall pay the costs. Plaintiff's counsel has made a motion, pursuant to Gen. Statute § 97-88, for attorney's fees to be assessed against defendants. In the discretion of the undersigned, said motion is HEREBY DENIED.
This case is ORDERED REMOVED from the Full Commission hearing docket.
This the ___________ day of August, 1997.
 S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
JHB/kws